UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEANDRE T. WILSON, SR. (2017-0708050), ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COOK COUNTY, ILLINOIS; THOMAS J. ) <br> DART, in his official capacity as Cook County ) <br> Sheriff; and CORRECTION OFFICER FNU ) <br> LEAKAKOS, in his individual capacity, ) <br> ) <br> Defendants. ) | No. 19 C 7824 <br><br> Judge Sara L. Ellis |

## OPINION AND ORDER

After Plaintiff Deandre T. Wilson, Sr., a detainee at the Cook County Jail (the "Jail"), suffered an attack at the hands of another detainee, Wilson filed this civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Cook County, Illinois (the "County"); Thomas J. Dart, in his official capacity as Cook County Sheriff; and Correctional Officer Leakakos, in his individual capacity. Wilson claims that Defendants violated his Fourth and Fourteenth Amendment rights by failing to protect him from and intervene in the attack. Defendants have filed motions to dismiss Wilson's first amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Because Wilson has not sufficiently alleged Leakakos' knowledge of a risk of harm, the Court dismisses the claims against Leakakos. But because he has sufficiently alleged a basis to hold Dart liable in his official capacity, the Court allows Wilson's *Monell* claim to proceed against Dart. Because the County does not have control over the Jail's policies or practices, however, Wilson may not proceed directly against the County and the County remains in this case solely for indemnification purposes.

## BACKGROUND[1]

Wilson was housed in one of the Jail's protective custody units in Division IX, which is reserved for detainees considered particularly vulnerable to attack and inmate-on-inmate violence. On October 1, 2019, Wilson and another detainee, Sincere Smith, played chess in Division IX's day room. Officer Leakakos, the supervising correctional officer, had left the day room unsupervised and unattended. During the chess match, Smith "began pacing around" and making offensive and threatening comments toward Wilson. Doc. 9 ¶ 3. Ultimately, Smith struck Wilson on the back of the head, causing Wilson significant pain and injury. Leakakos did not come to Wilson's aid. After Wilson filed a grievance, Smith was transferred to another tier.

This was not the first time Wilson had been attacked by another inmate while in protective custody at the Jail, having been the victim of inmate-on-inmate violence twice in the two years before the October 1, 2019 incident. The first attack occurred on November 27, 2017, when, during a transport from the Markham Courthouse to the Jail, a general population detainee called Wilson a "scaredy cat" and spit on and head-butted Wilson. *Id.* ¶ 25. The correctional officers had not separated Wilson from the other detainee or taken any other steps to protect Wilson. Additionally, while housed in Division X in 2018, a maximum security detainee made offensive comments to and struck Wilson in the day room, which correctional officers had again left unattended and unsupervised.

In 2007, the Department of Justice ("DOJ") opened an investigation into the conditions of confinement at the Jail. In its 2008 report (the "DOJ report"), the DOJ concluded that the Jail failed to adequately protect detainees from inmate-on-inmate violence, in part because of

---

[1] The facts in the background section are taken from Wilson's first amended complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

inadequate supervision of the detainees. The DOJ, the County, and Dart, among others, entered into a consent decree in 2010, under which Dart agreed to take steps to improve Jail conditions. Despite the consent decree and its required reforms, the Jail remains overcrowded and understaffed, with continued inadequate supervision of inmates.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, F.S.B. v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

I.        **Claims Against Leakakos (Counts I and II)**

Leakakos seeks dismissal of the claims Wilson asserts against him for failure to protect and failure to intervene. In regard to pretrial detainees, any claims for failure to protect arise under the Fourteenth Amendment. *Miranda v. Cty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (holding that an objective unreasonableness standard applies to all types of Fourteenth Amendment conditions of confinement claims brought by pretrial detainees). To state such a claim, Wilson must allege

facts indicating that: (1) "[t]he defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;" (2) "[t]hose conditions put the plaintiff at substantial risk of suffering serious harm;" (3) the defendant's conduct was objectively unreasonable (*i.e.*, the officer "did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious"); and (4) "[b]y not taking such measures, the defendant caused the plaintiff's injuries." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016); *Gosser v. McCorkle*, No. 1:17-cv-03257-TWP-MPB, 2020 WL 1244470, at *8 (S.D. Ind. Mar. 16, 2020) ("For his failure to protect claim, . . . Plaintiff must show that a defendant acted purposefully, knowingly or recklessly regarding Gosser's risk of assault, and that their conduct was objectively unreasonable."). Alleged negligence or gross negligence on the part of the officer does not suffice. *Miranda*, 900 F.3d at 353–54.

    Leakakos argues that Wilson has not sufficiently alleged that he purposely, knowingly, or recklessly disregarded the risk of harm to Wilson. Wilson continues to base his allegations against Leakakos on a claim that, because he was in protective custody, Leakakos and other correctional officers were obligated to protect him from harm. As the Court noted in addressing Wilson's initial complaint, correctional officers are not required to (and indeed cannot) guarantee a detainee's safety. *Smith v. Sangamon Cty. Sheriff's Dep't*, 715 F.3d 188, 191 (7th Cir. 2013); *see Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008) (correctional facilities "are dangerous places often full of people who have demonstrated aggression"). Wilson's "status as an inmate in protective custody does not support an inference of dangerousness or a known risk of a fight between [Wilson] and the other detainee." *Shaffer v. Randall*, No. 15 C 5770, 2017 WL

1739913, at *3 (N.D. Ill. May 4, 2017); *Vesey v. Owens*, No. 13 CV 7367, 2015 WL 3666730, at *8 (N.D. Ill. June 12, 2015) ("[A] general risk of violence is not enough to establish knowledge of a substantial risk of harm. Were that enough, prison officials would, in effect, become strictly liable for all violence in the institution." (citations omitted)). The Court previously noted that Wilson's claim against Leakakos failed to include additional details concerning Leakakos' absence from the day room and potential knowledge that Wilson was at risk of harm so as to state a claim. Doc. 5 at 5. Wilson has not cured this deficiency in the first amended complaint.

Wilson also argues that the two prior incidents of inmate-on-inmate violence demonstrate that he was at substantial risk of attack, but he has not alleged that Leakakos knew of these prior incidents. Nor has Wilson alleged that Smith had a particularly violent background or that Leakakos knew of any potential threats to Wilson, which would have placed Leakakos on notice of the potential danger in leaving Wilson and Smith unsupervised in the day room. *See Shaffer*, 2017 WL 1739912, at *3 ("[A] plaintiff cannot show that a defendant officer was on notice of a substantial risk of harm by pointing to a surprise attack, with no advance warning of either the plaintiff's vulnerability or the assailant's predatory nature."). Because Wilson alleges that Leakakos left the day room unattended, Smith's behavior prior to the punch cannot have provided Leakakos with notice. And while Leakakos may not have followed Jail rules in leaving the day room unattended, this suggests at most negligence, not purposeful or reckless action. *See Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."); *Vesey*, 2015 WL 3666730, at *9 (officer being "derelict in his official duties" suggests at most negligence). Therefore, Wilson has again failed to sufficiently allege a claim for failure to protect against Leakakos.

Relatedly, Wilson has alleged a separate claim against Leakakos for his failure to intervene in the attack. Wilson's claim essentially duplicates the failure to protect claim, alleging that Leakakos failed to take steps, such as intervening in the fight itself, to prevent Wilson's injury, and so the same analysis applies. Because Wilson has not alleged facts to allow an inference that Leakakos knew of a substantial risk of serious harm to Wilson, he cannot proceed on any separate failure to intervene claim and the Court dismisses both claims against Leakakos.[2]

## II.     *Monell* **Claim against Dart and the County (Count III)**

The Court next addresses Wilson's claim against Dart in his official capacity and the County for maintaining policies and practices of overcrowding and inadequate supervision at the Jail that allow for inmate-on-inmate violence. Initially, the County argues that because it has no control over the Jail's policies and practices, Wilson cannot pursue this claim against the County. "The County is not responsible for policies set by the Sheriff's Office and carried out by its deputies because in Illinois a sheriff is an independently elected county officer, not an employee of the county that he or she serves, and the deputies are employees of the Sheriff's Office." *Bertha v. Hain*, 787 F. App'x 334, 339 (7th Cir. 2019). Therefore, the County cannot be held liable for the policies and practices at the Jail, regardless of any financial or legal relationship between the County and the Sheriff.[3] *See Woods v. Lee*, No. 1:19-CV-4937, 2020 WL 419420,

---

[2] Had Leakakos been present during the attack, the analysis of the failure to protect and intervene claims would focus on whether Wilson sufficiently alleged that Leakakos did not reasonably respond to the attack. "A prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007); *see also Peate v. McCann*, 294 F.3d 879, 883 (7th Cir. 2002). But because Wilson has not alleged that Leakakos knew of any risk to Wilson and was not present at the time of the attack, such an analysis does not come into play.

[3] The County acknowledges that it must remain a party for indemnification purposes to the extent that any claims proceed against Leakakos or Dart.

at *4 (N.D. Ill. Jan. 27, 2020) (dismissing a claim concerning jail policies against the county where, "although the County provides funding, it is the Sheriff that controls the allegations about inadequate staffing").  The Court proceeds to consider whether Wilson has adequately stated a claim against Dart in his official capacity based on the Jail's alleged policies and practices.

Although Wilson cannot hold Dart liable in his official capacity based on *respondeat superior*, *Rossi v. City of Chicago*, 790 F.3d 729, 737 (7th Cir. 2015), Dart may be held liable under § 1983 for deliberate indifference pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978).  Liability for a *Monell* claim may be premised upon (1) an express policy that, when enforced, causes a constitutional violation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well-settled as to constitute a custom or usage with the force of law; or (3) a constitutional injury caused by a person with final policymaking authority.  *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).  Wilson claims a longstanding pattern and practice of overcrowding and inadequate supervision that allows inmate-on-inmate violence to occur, which he supports by pointing to the three assaults he suffered, Jail officials' failure to prevent those assaults, and the DOJ's 2008 report highlighting inadequate supervision as a reason for inmate-to-inmate violence.  Wilson must "plead[ ] factual content that allows the Court to draw the reasonable inference that [Dart] maintained a policy, custom, or practice" that contributed to the alleged violation.  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (internal quotation marks omitted); *Woodward v. Corr. Med. Servs. Of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (alleged policy or practice "must be a direct cause or moving force behind the constitutional violation" (citation omitted) (internal quotation marks omitted)).

Dart argues that the Court should dismiss the *Monell* claim because the 2008 DOJ report cannot support such a claim in light of the Jail's subsequent measures to address the problems identified in that report. But even setting aside the 2008 DOJ report, the Court finds that Wilson has sufficiently alleged a *Monell* claim.[4] Although Wilson relies only on his personal experiences, he sets forth three incidents where, given inadequate supervision, another detainee attacked him. The Seventh Circuit has indicated that, at the motion to dismiss stage, a plaintiff need not identify other individuals who have had similar experiences but rather may rely solely on their own experience. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016) (plaintiff "was not required to identify every other or even one other individual who had been arrested pursuant to a warrant obtained through the complained-of process"); *Williams v. City of Chicago*, No. 16-cv-8271, 2017 WL 3169065, at *8–9 (N.D. Ill. July 26, 2017) ("Post-*White* courts analyzing Monell claims . . . have 'scotched motions to dismiss' premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff." (collecting cases)). Nor does the Court apply a "heightened pleading standard" to *Monell* claims. *White*, 829 F.3d at 844 (quoting *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)). Instead, *Monell* claims may proceed "even with conclusory allegations that a policy or practice existed, so long as facts are pled that put the defendants on proper notice of the alleged wrongdoing." *Armour v. Country Club Hills*, No. 11 C 5029, 2014 WL 63850, at *6 (N.D. Ill. Jan. 8, 2014) (quoting *Riley v. Cty. of Cook*, 682 F. Supp. 2d 856, 861 (N.D. Ill. 2010)). Here, Wilson has included sufficient factual allegations to put Dart on notice of the alleged wrongdoing, tying the inmate-on-inmate violence he experienced to the allegedly inadequate supervision and staffing at the Jail. Discovery will uncover whether Wilson can prove his

---

[4] Because the *Monell* claim survives a motion to dismiss without requiring reliance on the DOJ report, the Court does not address whether that report would provide additional evidence of the widespread practice Wilson claims continues to exist at the Jail.

*Monell* claim, but at the pleading stage, he has stated a plausible claim for relief. *See Shields v. City of Chicago*, No. 17 C 6689, 2018 WL 1138553, at *4 (N.D. Ill. Mar. 2, 2018) ("[T]he City's arguments that Plaintiff's allegations do not 'establish' the existence of a widespread policy are misplaced because at this stage of the proceedings, the Court must determine whether Plaintiff has stated a plausible claim for relief, not that he has 'established' or 'proven' his claims"); *Barwicks v. Dart*, No. 14-CV-8791, 2016 WL 3418570, at *4 (N.D. Ill. June 22, 2016) (at the pleading stage, a plaintiff "need only *allege* a pattern or practice, not put forth the full panoply of evidence from which a reasonable factfinder could conclude such a pattern exists").

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Leakakos and Dart's motion to dismiss [16] and grants the County's motion to dismiss [29]. The Court dismisses the claims against Leakakos (Counts I and II) without prejudice. The Court dismisses the *Monell* claim against the County (Count III) with prejudice. The County remains in this case solely for indemnification purposes.

Dated: September 22, 2020

_____
SARA L. ELLIS
United States District Judge

9